UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICK DUNN,<br><br>       Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>       Respondent. | )<br>)<br>)<br>)<br>)    Criminal Action No.<br>)    20-10198-FDS<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON MOTION TO VACATE**

**SAYLOR, C.J.**

Petitioner Patrick Dunn has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on two grounds, both concerning the revocation of his supervised release: (1) that the Probation Office "departed from [its] initial/written sentencing recommendation" and (2) that the Court improperly failed to continue the revocation hearing until after his state criminal charges were adjudicated. He is proceeding *pro se*.

For the reasons set forth below, the motion will be denied.

**I.     Background**

   **A.     Factual Background**

Because the conviction resulted from a guilty plea, the following facts are taken from the sentencing hearing and the Presentence Investigation Report ("PSR"), unless otherwise noted. *See United States v. Connell*, 960 F.2d 191, 192-93 (1st Cir. 1992); *United States v. Garcia*, 954 F.2d 12, 14 (1st Cir. 1992).

In June 2017, a confidential source informed law enforcement that an individual known

to him as "A" was distributing large quantities of fentanyl, cocaine, and other controlled substances in the greater Boston area. (PSR ¶ 8). An investigation revealed that "A" was Adriano Cortez, who was on house arrest in Dorchester, Massachusetts. (*Id.*).

As part of the investigation into Cortez's drug-trafficking operation, two undercover officers purchased controlled substances from him on multiple occasions between September and November 2017. (*Id.* at ¶ 9). One of the undercover officers would contact him and place orders for fentanyl, cocaine, or both. (*Id.*). He would designate a meeting location, and at that location, one of his co-conspirators would provide the undercover officer with the controlled substance, in exchange for money to be delivered to Cortez. (*Id.*).

On September 25, 2017, Dunn sold 5.91 grams of cocaine and 5.81 of a mixture containing cocaine and fentanyl to an undercover officer on behalf of Cortez. (*Id.* at ¶ 23).

**B.     Procedural History**

On October 7, 2020, a grand jury returned a superseding indictment charging Dunn with conspiracy to distribute and to possess with intent to distribute 40 grams or more of fentanyl and cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On March 26, 2021, he pleaded guilty pursuant to a plea agreement. He was sentenced on September 9, 2021, to a term of imprisonment of time served followed by three years of supervised release.

On March 8, 2023, Lynn police officers responding to a report of a drug overdose found Dunn unconscious and in possession of significant quantities of illegal drugs. On March 22, 2023, Lynn police again responded to a report of a drug overdose and found Dunn in a state of intoxication. It appears that Dunn was subsequently summonsed to state court on drug trafficking charges.

On March 23, 2023, Dunn was arrested in connection with this proceeding for violating the conditions of his supervised release by committing a state crime and unlawfully using a

controlled substance.

The revocation hearing was originally set for May 8, 2023.  On May 4, the government (with the assent of defendant) moved to continue the hearing for 60 days because the parties were "in discussions regarding a potential global resolution" of the pending charges and "possible additional charges arising out of the facts underlying the supervised release violation." (Docket No. 717).  The Court granted that motion and rescheduled the hearing for July 20, 2023. (Docket No. 718).

On July 19, 2023, the parties filed another assented-to motion seeking to continue the hearing, both because the parties were "in discussions regarding a potential global resolution of the pending supervised release violation" and because "[d]efendant requires additional time to resolve issues arising out of a related state criminal case."  (Docket No. 721).  The Court granted that motion and rescheduled the hearing for August 17, 2023.  (Docket No. 722).

On August 16, 2023, defendant filed an unopposed motion to continue the hearing yet again, this time for another 60 days.  (Docket No. 723).  The stated reason was that the defendant "wishes to be arraigned on his state charges stemming from this violation, in order to get credit for both matters, if he were to be sentenced to this violation."  (*Id.*).  The Court granted that motion and again rescheduled the hearing, this time for October 12, 2023.  (Docket No. 724).

After a further rescheduling, and a status conference on October 24, 2023, the Court set a new hearing date of November 27, 2023.  (Docket No. 738).  That, too, was rescheduled. Finally, the hearing was set for December 11, 2023.  (Docket No. 741).

At the hearing on December 11, 2023, the Court declined to delay the proceeding further in order to await the outcome of the state proceeding.  Defendant stipulated to the violations. The Court revoked the judgment and sentenced defendant to 15 months of imprisonment

followed by 18 months of supervised release.

On December 26, 2023, defendant moved *pro se* to vacate, set aside, or correct his sentence pursuant to pursuant to 28 U.S.C. § 2255.

## II.   Legal Standard

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may file a motion to vacate, set aside, or correct a sentence.  The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief under § 2255.  *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). At the initial stage, in deciding whether a petitioner has met that burden, the court generally must accept his factual statements as true, "but . . . need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

Because petitioner is appearing *pro se*, his pleadings must also be construed more leniently than those drafted by an attorney.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, a petitioner's *pro se* status does not excuse him from complying with procedural and substantive requirements of the law.  *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

## III.   Analysis

As set forth above, petitioner seeks to vacate, set aside, or correct his sentence pursuant to § 2255 on two grounds:  (1) that the Probation Office departed from its initial sentencing recommendation and (2) that the Court improperly failed to continue the revocation hearing until

after petitioner's state criminal charges were adjudicated. Both of those claims fail, at a minimum, because they are procedurally barred.

Petitioner could have, but did not, raise his claim on direct appeal. *See United States v. Frederickson*, 988 F.3d 76, 80 (1st Cir. 2021) (revocation of supervised release can be directly appealed). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff v. United States*, 308 F.3d 124, 127-28 (1st Cir. 2002) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

Construing his *pro se* motion liberally, petitioner alleges that he did not bring his claims on direct appeal because he "did not know that [he] was able to, nor did counsel inform [him]." (Docket No. 745, 5-6). He also alleges that he raised the issue of continuing the revocation hearing "to [his] attorney numerous times and [the attorney] did not properly voice [his] concerns." (*Id.* at 6).

At the revocation hearing on December 11, 2023, however, this court clearly informed petitioner of his right to challenge the revocation on direct appeal. In addition, petitioner's counsel at the hearing requested numerous times that the court continue the revocation hearing to a later date, which the court declined to do.

Furthermore, and in any event, petitioner also fails to allege prejudice. To do so, he would need to show that there is "a reasonable probability that, but for [the] errors, the result of the proceeding would have been different." *United States v. McForbes*, 480 F. Supp. 3d 300, 302 (D. Mass. 2020). Here, he cannot come close to making such a showing. Whether the Probation Office's recommendation was changed is immaterial, because the sentence to be imposed after the revocation of supervised release is left to the discretion of the court. Petitioner

5

does not allege that his post-revocation sentence was imposed in violation of 18 U.S.C. § 3583(e).  Moreover, the Court imposed a sentence that was at the low end of the Guideline range.  Finally, after a delay of more than half a year, the Court was under no obligation to keep continuing the proceeding indefinitely to await the adjudication of the state-court proceeding.  Even then, whether petitioner's state-court charges might have been dismissed is irrelevant; he stipulated that he had in fact violated the conditions of his supervised release, including the commission of a state drug offense.

Petitioner therefore cannot "demonstrate cause for the failure and prejudice or actual innocence," and his claim is procedurally barred.  *Berthoff*, 308 F.3d at 127-38.

### IV.     Conclusion

For the foregoing reasons, petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

**So Ordered.**

Dated:  February 16, 2024

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court